IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-HC-2086-BO

| | | |
|---|---|---|
| ANTHONY TOWNSEND, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| RENOICE STANCIL, | ) | |
| Respondent. | ) | |

Anthony Townsend ("petitioner"), a state prisoner, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Renoice Stancil, is before the court with a motion for summary judgment to which petitioner responded. The matter is ripe for determination.

I.  Background

On December 18, 2009, after a jury trial in the Cumberland County Superior Court, petitioner was convicted of one count of first-degree rape, three counts of taking indecent liberties with a child, and one count of attempted first-degree sexual offense. Pet., Question 1-5. Petitioner was sentenced to consecutive terms of 240 to 297 months' imprisonment and 125 to 159 months' imprisonment. Id. at Question 3. Jack Carter represented petitioner at trial. Id. at Question 16.

Petitioner appealed as of right through counsel Geoffrey W. Hosford to the North Carolina Court of Appeals. Id. On December 21, 2010, the Court of Appeals entered an unpublished opinion finding no error in petitioner's criminal judgments. State v. Townsend, 706 S.E.2d 841, 2010 WL 5421427 (Dec. 21, 2010) (No. COA10-477).

On September 6, 2011, in the North Carolina Superior Court, petitioner filed a state petition for writ of habeas corpus and, in the alternative, a motion for appropriate relief (MAR). Mem. in Supp. of Summ. J, Ex. 5. To the extent petitioner's September 6, 2011 filing sought habeas relief, the court denied relief on September 7, 2011. Id., Ex. 6. To the extent petitioner's September 6, 2011 filing sought relief as a motion for appropriate relief (MAR), the court denied relief on September 23, 2011. Id., Ex. 7.

On or about September 27, 2011, petitioner filed a motion to reconsider the Superior Court's order denying his September 6, 2011, filing to the extent it sought relief by way of a writ of habeas corpus. Id., Ex. 8. On October 3, 2011, the motion to reconsider was denied by the court. Id., Ex. 9.

On October 25, 2011, petitioner filed a petition for writ of certiorari in the North Carolina Supreme Court seeking review of the orders denying his petition for writ of habeas corpus and denying his motion to reconsider. Id., Ex. 10. On December 8, 2011, the North Carolina Supreme Court denied petitioner's petition for writ of certiorari. State v. Townsend, 365 N.C. 370, 719 S.E.2d 36 (Dec. 8, 2011) (No. 458P11).

On December 12, 2011, petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals seeking review of the order denying his Alternative MAR. Id., Ex. 12 and Ex. 13. On December 30, 2011, the North Carolina Court of Appeals denied petitioner's petition for writ of certiorari. Id., Ex. 14.

On February 1, 2012, petitioner filed a second MAR in the North Carolina Superior Court. Id., Ex. 15. On February 23, 2012, the Superior Court denied petitioner's February 1, 2012, MAR. Id., Ex. 16.

Petitioner also filed a petition for writ of certiorari in the North Carolina Supreme Court to review a prior order of the North Carolina Court of Appeals. State v. Townsend, 722 S.E.2d 603 (N.C. Mar. 8, 2012) (No. 458P11-2). On March 8, 2012, the North Carolina Supreme Court dismissed petitioner's certiorari petition filed therein. State v. Townsend, 722 S.E.2d 603 (N.C. Mar. 8, 2012) (No. 458P11-2). Id.

On March 16, 2012, petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals seeking review of the February 23, 2012, order denying his MAR. Mem. in Supp. of Summ. J., Ex. 17 and 18. On March 30, 2012, the North Carolina Court of Appeals dismissed petitioner's March 16, 2012 certiorari petition. Id., Ex. 19.

Petitioner submitted this 28 U.S. § 2254 petition on March 28, 2012.

II. Issues

Petitioner asserts three issues in his petition: (1) due process violations from the State's failure to present sufficient evidence to support the crimes for which petitioner was charged and convicted, and Confrontation Clause violations from the denial of petitioner's right to cross-examine witness Benita Townsend; (2) defective indictments; and (3) constitutionally defective statutes N.C.G.S. §§ 14-27.4(a)(1) and 14-27.2(a)(1).

III. Discussion

    i.    Summary Judgment

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the

moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

    ii.    Habeas Corpus Standard

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see Hardy v. Cross, ___ U.S. ___, 132 S. Ct. 490, 493–94 (2011) (per curiam); Bobby v. Dixon, ___ U.S. ___, 132 S. Ct. 26, 29–31

4

(2011) (per curiam); Cavazos v. Smith, ___ U.S. ___, 132 S. Ct. 2, 4–8 (2011) (per curiam); Renico v. Lett, 559 U.S. 766, ___, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Congress intended the AEDPA standard to be difficult to meet. Harrington v. Richter, 131 S. Ct. 770, 786 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. In order to prevail in an action brought under section 2254(d), a petitioner must show that "there was no reasonable basis to deny relief." Id. at 784; DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011), cert. denied, No. 11-6640, 2011 WL 4528510 (U.S. Dec. 5, 2011).

    iii.    Application

    a.    Issue One: Due process violations from the State's failure to present sufficient evidence to support the crimes for which petitioner was charged and convicted, and Confrontation Clause violations for the denial of petitioner's right to cross-examine witness Benita Townsend

As argued by respondent, this claim is more easily analyzed if broken into two subsections for discussion of 1) the due process claim and 2) the Confrontation Clause claim.

1. Due Process

As for the due process sufficiency of evidence issue, petitioner raised this claim on direct appeal to the North Carolina Court of Appeals. The state court records do not reveal that he subsequently raised this claim in his petition for discretionary review.[1]

A habeas petitioner in state custody generally must exhaust state court remedies. See 28 U.S.C. § 2254(b). Furthermore, a federal habeas court may not review unexhausted claims that would be treated as procedurally barred by state courts-absent cause and prejudice or a fundamental miscarriage of justice. See Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004); Clagett v. Angelone, 209 F.3d 370, 378 (4th Cir. 2000); Mackall v. Angelone, 131 F.3d 442, 445 (4th Cir.1997) (en banc). This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (internal quotation marks and citation omitted). Therefore, the Supreme Court instructs that, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" to include "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." Id. at 845, 847. One must fairly present to the state court "both the operative facts and the controlling legal principles" associated with each claim. Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000) (citing Matthews v. Evatt, 105 F.3d 907, 911 (4th

---

[1]In North Carolina, seeking discretionary review of a North Carolina Court of Appeals decision in the North Carolina Supreme Court is part of the ordinary appellate review process. N.C.G.S. § 7A-31 (2011) (noting requirements for seeking of discretionary review of a North Carolina Court of Appeals' decision in the North Carolina Supreme Court).

Cir.1997) (internal quotation marks omitted)). "In other words, the ground must 'be presented face-up and squarely.'" Longworth, 377 F.3d 437, at 448 (citing Mallory v. Smith, 27 F.3d 991, 995 (4th Cir.1994)) (citation and internal quotation marks omitted).

As noted above, procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). To show "prejudice," the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). "The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Williams v. Bagley, 380 F.3d 932, 973 (6th Cir. 2004) (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)) "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. No allegations rising to cause or prejudice or fundamental miscarriage of justice have been clearly argued to satisfy the gateway to avoid a procedural bar, and the claim is dismissed.

7

Alternatively, the court reviews the merits and again the claim fails. A state prisoner may challenge the sufficiency of the evidence in a federal habeas corpus proceeding pursuant to 28 U.S.C. § 2254(d). Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003). In determining whether there was sufficient evidence to support a petitioner's conviction, the Supreme Court has held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts." Id. Furthermore, the Supreme Court has held that any claim of insufficient evidence is necessarily a federal due process claim. See Jackson, 443 U.S. at 321; In re Winship, 397 U.S. 358, 364 (1970). See also West v. Wright, 931 F.2d 262, 266 (4th Cir. 1991) (any challenge to sufficiency of evidence is necessarily due process challenge), overruled on other grounds, 505 U.S. 277 (1979).

The North Carolina Court of Appeals thoroughly reviewed and rejected this claim.[2]

> We review the denial of a motion to dismiss for insufficient evidence de novo. State v. Bagley, 183 N.C.App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted). In order to survive a motion to dismiss, the State must have presented substantial evidence as to each essential element of the offense charged and as to defendant's identity as the perpetrator. State v. Scott, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002).

---

[2]For an understanding of the parties discussed in the opinion the court notes that petitioner was born on January 16, 1965. On April 17, 1999, petitioner married Benita Townsend ("Townsend"). Townsend has two daughters, J.B. and A.V. Neither girl is defendant's biological daughter. A.V. was born in 1987 and J.B. in 1992. Townsend and defendant have one biological son.

8

Our Supreme Court has set forth the standards governing our review of motions to dismiss:

> When ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. Any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered. The trial court must decide only whether there is substantial evidence of each essential element of the offense charged and of the defendant['s] being the perpetrator of the offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. When the evidence raises no more than a suspicion of guilt, a motion to dismiss should be granted. However, so long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence.

State v. Miller, 363 N.C. 96, 98–99, 678 S.E.2d 592, 594 (2009) (internal citations and quotation marks omitted). In addition, a " 'substantial evidence inquiry examines the sufficiency of the evidence presented but not its weight.'" State v. Marshall, 188 N.C.App. 744, 753, 656 S.E.2d 709, 715–16 (quoting State v. Garcia, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004), cert. denied, 543 U.S. 1156, 161 L.Ed.2d 122 (2005)), disc. rev. denied, 362 N.C. 368, 661 S.E.2d 890 (2008). "'Evidentiary contradictions and discrepancies are for the jury to resolve and do not warrant dismissal.'" Id. at 753, 656 S.E.2d at 716 (quoting State v. Garcia, 358 N.C. 382, 413, 597 S.E.2d 724, 746 (2004), cert. denied, 543 U.S. 1156, 161 L.Ed.2d 122 (2005)). Thus, "[i]f there is more than a scintilla of competent evidence to support the allegations in the warrant or indictment, it is the [trial] court's duty to submit the case to the jury." State v. Horner, 248 N.C. 342, 344–45, 103 S.E.2d 694, 696 (1958) (citations omitted).

To prove first-degree statutory rape, pursuant to North Carolina General Statutes, section 14–27.2(a)(1), the State must show that (1) defendant had vaginal intercourse with the victim, (2) the victim was under thirteen years of age, (3) defendant was at least twelve years of age, and (4) defendant was at least four years older than the victim. N.C. Gen.Stat. § 14–27.2(a)(1) (2001). "The unsupported testimony of the [accuser] in a prosecution for rape has been held in many cases sufficient to require submission of the case to the jury." State v. Bailey, 36 N.C.App. 728, 730, 245 S.E.2d 97, 99 (1978) (citations omitted). "It is equally well-settled that the testimony of a single witness is adequate to withstand a motion to dismiss when that witness has testified as to all the required elements of the crimes at issue." State v. Whitman, 179 N.C.App. 657, 670, 635 S.E.2d 906, 914 (2006) (citations omitted).

9

In the case sub judice, J.B. testified as to her birth date, which is in 1992. Defendant was born on 16 January 1965. J.B. also testified that, during the period of 1 March through 30 April 2002, when she was ten years of age, defendant had vaginal intercourse with her. J.B. testified that, while she was in defendant's bedroom, he told her that it was time for her to "become a woman." Defendant told J.B. to take off her clothes and when she did, defendant, wearing a condom, leaned J.B. over the bed and put his penis into her vagina. Because J.B. testified as to all the required elements of the crime at issue, and because it is a jury's duty to weigh a witness's credibility, the trial court properly denied defendant's motion to dismiss the charge of statutory rape.

Similarly, the State presented substantial evidence as to the three indecent liberties charges. "A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he . . . [w]illfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire [.]" N.C. Gen.Stat. § 14–202.1(a)(1) (1997).

In the instant case, A.V. testified that, at some point during the period of 1 May through 31 August 1999, she and J.B. were in defendant and Townsend's backyard by the swimming pool chasing one another. As A.V. ran past defendant, he grabbed her leg, causing her to fall. Defendant asked if she was okay, and, as he picked her up, he grabbed and touched her vaginal area on the outside of her swimsuit. A.V. testified that she was eleven years old at the time.

J.B. testified as to a second incident in May 2001, when defendant called J.B., who was nine years old at the time, to his bedroom. J.B. testified that she saw a "porn web site" on the computer screen. As J.B. tried to leave the bedroom, defendant called her back. Defendant then pulled off J.B.'s shirt and eventually removed all of her clothes, telling J.B. that Townsend [defendant's wife and A.V. and J.B's biological mother] had said that it was okay. A pornographic movie was on the television, which showed "two people having sex." Defendant told J.B. that they could be doing that, and then he proceeded to undress himself. Townsend's testimony at trial corroborated J.B.'s testimony when she told Officer West in May 2001 that she unexpectedly had walked in on defendant while he was watching a pornographic movie in their bedroom with J.B. This evidence goes to the element of "[w]illfully tak[ing] or attempt[ing] to take any immoral, improper, or indecent liberties with any child" and also demonstrates defendant's "purpose of arousing or gratifying sexual desire[.]" N.C. Gen.Stat. § 14–202.1(a)(1) (1997). See State v. Rhodes, 321 N.C. 102, 105, 361 S.E.2d 578, 580 (1987) (holding that an inference as to defendant's purpose may be drawn from the evidence of defendant's actions); see also State v. Turman, 52 N.C.App. 376, 377, 278 S.E.2d 574, 575 (1981) (holding that no actual touching of a child is necessary to support the offense of indecent liberties with a child) (citations omitted).

According to J.B., a third incident occurred in the spring 2002, while J.B. was talking with one of her friends on the phone. Defendant hung up the phone and made J.B. "play with him or jerk him off." Defendant ejaculated and left the ejaculate on the floor for J.B. to clean up.

Giving the State the benefit of all reasonable inferences, the combined testimony from A.V., J.B., and Townsend provides substantial evidence in support of each essential element of three counts of indecent liberties with a child. In the light most favorable to the State, this evidence supported one count of taking indecent liberties with A.V. during the summer of 1999, one count of taking indecent liberties with J.B. in May 2001, and one count of taking indecent liberties with J.B. in the spring of 2002.

Finally, the State's evidence also survives a motion to dismiss as to the sexual offense charge. "The crime of first-degree sexual offense is committed when a defendant engages in a sexual act with a child under the age of 13 years and the defendant is at least 12 years old and at least four years older than the victim." State v. Goforth, 170 N.C.App. 584, 587, 614 S.E.2d 313, 315, cert. denied, 359 N.C. 854, 619 S.E.2d 854 (2005) (citing N.C. Gen.Stat. § 14–27.4(a)(1) (2003)). A sexual act is defined as "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body[.]" N.C. Gen.Stat. § 14–27.1(4) (1997). "The elements of attempt are an intent to commit the substantive offense and an overt act which goes beyond mere preparation but falls short of the completed offense." State v. Squires, 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003) (citing State v. Robinson, 355 N.C. 320, 338, 561 S.E.2d 245, 257, cert. denied, 537 U.S. 1006, 154 L.Ed.2d 404 (2002)), cert. denied, 541 U.S. 1088, 159 L.Ed.2d 252 (2004).

A.V. testified that, sometime between 1 May and 31 August 1999, defendant, A.V., J.B., and Lyndon [biological son of defendant and Townsend] were lying on a pallet watching a movie. A.V., who was eleven years old at the time, went to the kitchen for some food. When she returned, her brother was asleep and had been moved to the other side of defendant, leaving an open spot next to defendant. After she lay back down, defendant began to fondle A.V.'s breasts and vaginal area. He then pulled her pants down and attempted to penetrate her anal area. Although she was unsure at first whether or not defendant's penis was against her skin, she knew once defendant attempted to penetrate her anal area. A.V. was in great pain, but she never told defendant to stop. Finally, when it started to hurt much worse, A.V. got up and went to her room.

In the light most favorable to the State, this evidence supports the elements of first-degree sexual offense. See N.C. Gen.Stat. § 14–27.4(a)(1) (1997). Accordingly, we hold that the trial court properly denied defendant's motion to dismiss the charge of first-degree sexual offense.

11

> Although defendant argues that his charges should have been dismissed because the State introduced only the "shaky" testimony of his stepdaughters, we reiterate that the weight and credibility of a witness's testimony are for the jury to determine. State v. Moses, 350 N.C. 741, 767, 517 S.E.2d 853, 869 (1999), cert. denied, 528 U.S. 1124, 145 L.Ed.2d 826 (2000). The State satisfied its burden to produce substantial evidence as to each element of the five charges.

Townsend, 706 S.E.2d 841, 2010 WL 5421427, *4-7.

The Court of Appeals' opinion as to the sufficiency of evidence in convicting petitioner did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e., Wright v. West and Jackson v. Virginia. Nor is the opinion based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. See Harrington, ___ U.S. ___, ___, 131 S. Ct. 770, 784-85 (2011); see also Cullen v. Pinholster, __ U.S. __, ___, 131 S. Ct. 1388, 1389-99 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."). The claim is dismissed.

    2.    Confrontation Clause

As for the Confrontation Clause, the North Carolina Court of Appeals addressed the claim as follows.

> Defendant's second argument is that the trial court erred by denying defendant's request to cross-examine Townsend as to J.B.'s activities on MySpace and Facebook. Defendant contends that the specific conduct from the online activity demonstrated J.B.'s lack of veracity and credibility. We disagree.
>
> We review the question of relevance de novo; however, the trial court's determination is given deference. State v. Lawrence, 191 N.C.App. 422, 427, 663 S.E.2d 898, 901 (2008) (citing State v. Wallace, 104 N.C.App. 498, 502, 410 S.E.2d 226, 228 (1991), cert. denied, 506 U.S. 915, 121 L.Ed.2d 241 (1992)), aff'd, 363 N.C. 118, 678 S.E.2d 658 (2009) (per curiam). The trial court' ruling as to whether the prejudicial effect of relevant evidence outweighs its probative value is reviewed pursuant to an abuse of discretion standard. State v. Whaley,

362 N.C. 156, 159-60, 655 S.E.2d 388, 390 (2008) (citations omitted). "An abuse of discretion results when 'the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" Id. at 160, 655 S.E.2d at 390 (quoting State v. Peterson, 361 N.C. 587, 602, 652 S.E.2d 216, 227 (2007), cert. denied, 552 U.S. 1271, 170 L.Ed.2d 377 (2008)).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen.Stat. § 8C-1, Rule 401 (2009). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen.Stat. § 8C-1, Rule 403 (2009).

In the case sub judice, defendant requested that Townsend be allowed to describe J.B.'s Facebook and MySpace postings at trial. Allegedly, these postings include photographs of young men who are making gang signs, J.B. in a swimsuit, J.B. making gang signs, and J.B. dressed in revealing attire. Other pictures from J.B.'s online accounts allegedly include a boy with a mask, a boy with paper currency on his face, and a boy holding a gun. Defendant argues that these postings are relevant evidence concerning J.B.'s character, because, if J.B. concealed her friends and the fact that she may have gang ties from her mother, her credibility reasonably may be questioned.

On voir dire, the trial court probed this argument by inquiring of defense counsel:

THE COURT: . . . what's the relevance of this testimony?

[Defense counsel]: Well, that [Townsend] discovered this shortly after the allegations of [defendant] were made and that she was unaware of it and that she had had conversations with [J.B.] about staying away and having boys at the house and some other things and that she hadn't been honest and forthright with her and that it has a bearing on [J.B.]'s credibility with her own mother.

THE COURT: Is it not already abundantly clear that [J.B.] and her mother, this witness, were having some difficulty and that [J.B.] wanted to move out of the house?

[Defense counsel]: Well, I-if you're asking me, I would think, yeah, it's clear but I don't know if it's enough to be abundant and that's-I guess when you're defense counsel, you never know when it's abundant or not.

13

THE COURT: Do you concede that none of the postings whether it was a written posting or a photograph that may have been posted on the web site, pertain to the allegations made against your client or, for that matter even pertain to your client?

[Defense counsel]: I concede that. I think it applies-could apply only to [J.B.'s] veracity. That's the only thing I think it could apply to.

The trial court then ruled:

> The Court has considered the defendant's offer of proof and the nature of the testimony he is attempting to elicit from this witness and the Court has considered the definition of relevant evidence under Rule 401 which is defined as evidence, having any tendency to make the existence of any fact that is of consequence to the determination of action more probable or less probable than it would be without the evidence, and the Court concludes that this testimony is not relevant within the definition of that rule. Even if the testimony is probative, the Court concludes under Rule 403 that the probative value of the testimony is substantially outweighed by the danger of unfair prejudice or confusion of the issues or of misleading the jury or by considerations of undue delay and waste of time. Accordingly, the [S]tate's objection is sustained.

The trial court made a thorough inquiry into this issue and concluded that the evidence was not relevant, and even if relevant, its probative value was substantially outweighed by the prejudicial effect. Considering that potential gang affiliation could produce an emotional, rather than reasoned, bias against J.B. and that her tense relationship with her mother already had been discussed and explored, we cannot say that the trial court abused its discretion in excluding this evidence.

Townsend, 706 S.E.2d 841, 2010 WL 5421427, *5-7.

The United States Supreme Court has held the following in regard to the Confrontation Clause:

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), "means more than being allowed to confront the witness physically." Davis v. Alaska, 415 U.S., at 315, 94 S.Ct., at 1110. Indeed, " '[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination.' " Id., at 315-316, 94 S.Ct., at 1110 (quoting 5 J.

Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)) (emphasis in original). Of
particular relevance here, "[w]e have recognized that the exposure of a witness'
motivation in testifying is a proper and important function of the constitutionally
protected right of cross-examination." Davis, supra, at 316-317, 94 S.Ct., at 1110
(citing Greene v. McElroy, 360 U.S. 474, 496 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377
(1959)). It does not follow, of course, that the Confrontation Clause of the Sixth
Amendment prevents a trial judge from imposing any limits on defense counsel's
inquiry into the potential bias of a prosecution witness. On the contrary, trial judges
retain wide latitude insofar as the Confrontation Clause is concerned to impose
reasonable limits on such cross-examination based on concerns about, among other
things, harassment, prejudice, confusion of the issues, the witness' safety, or
interrogation that is repetitive or only marginally relevant. And as we observed
earlier this Term, "the Confrontation Clause guarantees an opportunity for effective
cross-examination, not cross-examination that is effective in whatever way, and to
whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20,
106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) ( per curiam ) (emphasis in original).

Delaware v. Van Arsdall, 475 U.S. 673, 678-679 (1986).

Although the North Carolina Court of Appeals did not expressly analyze this claim in reference to the Confrontation Clause, "there are circumstances in which a line of state precedent is viewed as fully incorporating a related federal constitutional right." Johnson v. Williams, ___ S. Ct. ___, 2013 WL 610199, *7 (2013). Furthermore, "[w]hen a state court rejects of a federal claim without expressly addressing that claim, a federal court must presume that the federal claim was adjudicated on the merits-but that presumption" is rebuttable in very limited situations. Id. at *8-9. The Court of Appeals' opinion as it relates to the Confrontation Clause issue did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e., Delaware. Nor is the opinion based on an unreasonable determination of facts, in light of the evidence presented in the state court proceedings. See Harrington, 131 S. Ct. at 784-85; see also Cullen v. Pinholster, 131 S. Ct. at 1389-99 (2011) ("We now hold that review under § 2254(d)(1) is limited to the record

15

that was before the state court that adjudicated the claim on the merits."). The claim is dismissed.

      b.      Issue Two: Defective Indictments

Petitioner's second claim is that his indictments under N.C.G.S. §§ 14-27.4(a)(1) and 14-27.2(a)(1) were defective because they failed to allege an offense and, thus, failed to inform him of the essential elements of the offenses. A claim alleging defects in a state-court indictment is "not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985). "Defects in an indictment do not deprive a court of its power to hear a case." United States v. Cotton, 535 U.S. 625, 630 (2002). Additionally, the "Fifth Amendment right to 'presentment or indictment of a Grand Jury'" does not apply in state-court proceedings. Apprendi v. New Jersey, 530 U.S. 466, 477 n.3 (2000); see United States v. Jackson, 327 F.3d 273, 284 (4th Cir. 2003). Furthermore, no fundamental fairness argument has been articulated by petitioner.

The MAR court examined the substance of this claim and concluded that the indictments were "not defective as a matter of law in not setting out each element of the offense." The North Carolina Superior Court's adjudication of this claim is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, i.e., Cotton. Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Thus, the claim is dismissed.

16

c.  Issue Three:  Constitutionally Defective Statutes N.C.G.S. §§ 14-27.4(a)(1) and 14-27.2(a)(1).

Petitioner's third claim is that N.C.G.S. §§ 14-27.4(a)(1) and 14-27.2(a)(1) violate the United States Constitutional prohibition against Bills of Attainder and the Fifth, Sixth, and Fourteenth Amendments to the Constitution. The claim is not explained except that petitioner argues that the North Carolina state legislature does not have the authority to determine a person's guilt when creating a statue by using the word "victim" in its statutory language defining the offense of first-degree sexual offense. Petitioner contends that the use of such language predetermines guilt and invades the province of the jury. In response to the motion for summary judgment, petitioner again fails to explain the claim but states "the State Court never allowed petitioner and [sic] evidentiary hearing on any of his claims and the reason for denial of his state MAR was based on the erroneous conclusion that these constitutional claims were raised in a previous MAR. Thus he asserts that no deference to the state court decision should be given by this court.

"Article 1, § 9 of the United States Constitution provides that '[n]o Bill of Attainder or ex post facto Law shall be passed.' The Supreme Court has explained that a statute is prohibited as ex post facto if it " 'punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed.' "" In re DNA Ex Post Facto Issues, 561 F.3d 294, 298 (4th Cir. 2009) (citing Dobbert v. Florida, 432 U.S. 282, 292 (1977). Such as argument by petitioner is baseless, without merit, and does not fall within the parameters of Article 1, § 9.

17

Petitioner raised the substance of this claim in his February 1, 2012, MAR. The North Carolina Superior Court summarily concluded that petitioner's "underlying constitutional claims have no legal merit." Mem. in Supp. of Summ. J., Ex 16. Although a summary adjudication, the Superior Court's order denying the third claim raised in this court is entitled to deference. See Harrington, 131 S. Ct. at 784-86; see also Hartman v. Lee, 283 F.3d 190, 194 (4th Cir. 2002) (noting that even though state court may not state reasons for decision on merits, decision is still entitled to deference if independent review of law reveals that result meets standards established by § 2254(d)), cert. denied, 537 U.S. 1114 (2003).

The North Carolina Superior Court's adjudication is not contrary to, nor involves an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Thus, the claim is dismissed.

IV.     Certificate of Appealability

Having dismissed the petition, the court must now consider the appropriateness of the certificate of appealability. See Rule 11 of the Rules Governing Section 2254 Cases ("Habeas Rules") ("the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") A certificate of appealability may issue only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a petitioner's constitutional claims have been adjudicated and denied on the merits by the district court, the petitioner must demonstrate reasonable jurists could debate whether the issue should have been decided differently or show the issue is adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

18

After reviewing the claims presented in the habeas petition in light of the applicable standard, the court finds reasonable jurists would not find the court's treatment of any of petitioner's claims debatable or wrong and none of the issue are adequate to deserve encouragement to proceed further. Accordingly, a certificate of appealability is denied.

VI. Conclusion

Accordingly, respondent's motion for summary judgment is GRANTED [D.E. 9]. The certificate of appealability is also DENIED, and the Clerk is DIRECTED to close the case.

SO ORDERED, this **7** day of March 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE